# Staunton

## J. W. KIZEE, SR., ET ALS. v. P. F. CONWAY, ET ALS.

September 5, 1945.

Record No. 2989.

Present, Campbell, C. J., and Hudgins, Gregory, Browning, Eggleston and Spratley, JJ.

The opinion states the case.

*A. M. Aiken* and *Benjamin P. Kushner*, for the plaintiffs in error.

*Rutledge C. Clement*, for the defendants in error.

EGGLESTON, J., delivered the opinion of the court.

J. W. Kizee, Sr., and the five other plaintiffs in error had, prior to January 1, 1945, been operating taxicabs in the city of Danville under successive annual permits or licenses granted to them by the city council, which ran concurrently with the calendar year and automatically expired on December 31 of each year. Their last permits had been granted under a comprehensive ordinance designed "To Regulate the Licensing and Operation of Public Vehicles, Taxicabs and For Hire Cars" on the city's streets, adopted on August 12, 1940, and thereafter amended.

In the fall of 1944 the council amended and reenacted the ordinance, but without changing its main features. The amended ordinance prohibited the operation of such vehicles unless and until a "certificate of public convenience and necessity and a license therefor" had been issued to the owner of the vehicle, and unless and until certain other prescribed conditions, regulations and restrictions had been complied with. Applications for certificates of public convenience and necessity were to be filled with the council, upon prescribed forms which required certain detailed information with respect to the applicant's name, address, financial ability, experience, character, etc. All applications were to be referred to the chief of police who was required to report to the council his findings thereon.

The ordinance left to the determination of the council itself whether the public convenience and necessity required the operation of such vehicles for which applications had been filed, and enumerated certain factors which the council should consider in reaching its decision, namely, the adequacy, efficiency and safety of existing taxicab service, the probable permanence and quality of the services offered by the applicant, and his financial ability, character, qualification, experience, etc. It provided that the council, in the exercise of its sound discretion, might grant or deny the certificates applied for and specify the number of vehicles that each applicant might operate. Certificates were to run for the calendar year. Between October 1 and December 31 of each year, the council was to "conduct a hearing" for the purpose of determining the number of such vehicles for which certificates should be issued during the next calendar year, and for the purpose of determining to which person or persons such certificates should be issued. The first of such hearings was to be between October 1 and December 31, 1944.

The ordinance contained other provisions with respect to the regulation of such vehicles, the fares to be charged, and other matters which are not pertinent to the present inquiry.

Pursuant to the terms of this ordinance, the plaintiffs in error and a number of other persons filed applications for certificates of public convenience and necessity or permits for the operation of taxicabs on the streets of the city during the calendar year 1945. After a consideration of these applications, the council adopted an ordinance fixing at thirty-five the number of taxicabs necessary for the public interest to be operated for the calendar year 1945. This was the same number which had been licensed to operate for the calendar year 1944. At the same time the council granted certificates of public convenience and necessity or permits to six applicants, other than the plaintiffs in error, for the operation of thirty-five taxicabs in the city for the ensuing calendar year. One of the successful applicants, Hubert F.

Fitchett, was given a permit to operate thirty cabs, while each of the other applicants was given the right to operate one cab. Thus the effect of the councilmanic action was to deny the application of each of the plaintiffs in error.

Thereupon the plaintiffs in error filed their petition in the court below for a declaratory judgment against P. F. Conway and eight other defendants, constituting the council of the city of Danville. The petition alleged that the applicants had been operating taxicabs in the city for a number of years, including and preceding the calendar year 1944; that their applications for the renewal of their permits for the year 1945 had been rejected by the council, as stated; that the ordinance enacted by the council for the regulation and licensing of taxicabs, under which it had proceeded in denying permits to the petitioners, was unconstitutional and void; and that, in any event, the council, in passing upon the petitioners' applications for permits, had not followed the terms and provisions of the ordinance, but had acted arbitrarily in denying such applications.

The prayer of the petition was, in substance, that the court adjudicate whether the ordinance was "valid and legal," in whole or in part, whether in considering and denying the petitioners' applications the council had complied with the terms of the ordinance, and whether the petitioners might continue to operate their vehicles in the city of Danville "after midnight December 31, 1944, without violating any valid law."

The members of the city council filed an answer and motion to dismiss the petition, taking the position that the petitioners had "no vested right" to use the streets of the city for the conduct of their "taxicab business," but could lawfully do so only with the permission of the city council; that in the exercise of its lawful powers the council had denied to petitioners the right to conduct such business; and that hence petitioners had no further right to use the streets for such purpose.

After the evidence had been heard *ore tenus* the trial court, in a written opinion, sustained the contention of the

city council. It declined to adjudicate whether the ordinance, or the particular provisions which petitioners questioned, were valid, or whether in passing upon the applications in question the city council had followed the terms of the ordinance. It held that the council, in the exercise of the powers vested in it, was within its rights in denying permits to the petitioners, and that since such permits had been denied and the petitioners' right to operate their vehicles over the city's streets would expire at midnight on December 31, 1944, such operation thereafter "would be unlawful."

To review the judgment carrying out these views the present writ of error has been awarded.

Before us the plaintiffs in error make substantially the same contentions advanced by them in the court below. They contend that the ordinance is unconstitutional and void, because it fails to prescribe or lay down a fixed and definite standard to be followed by the council in passing upon the applications for permits to operate such vehicles, but on the contrary, permits it to exercise the arbitrary discretion to grant some applications and deny others. They also say that even if the ordinance be valid, its terms and provisions were not followed by the council in passing upon the several applications, and that the council denied their applications without giving them the "hearing" provided for in the ordinance. Hence, they say, they have been "improperly and illegally deprived of their rights to continue in their chosen occupation."

This reasoning of the plaintiffs in error is based upon the premise that the refusal of the council to renew their permits to operate public vehicles over the city's streets has deprived them of a vested or inherent right. But this assumption is unsound and lacking in legal foundation.

It will be observed that we are not here concerned with the revocation of permits which had been granted to the plaintiffs in error and which, so long as they continued, gave the holders valuable rights which should have been respected. The permits or rights which the plaintiffs in error had acquired from the city were due to expire on December 31,

1944. Our concern is with the renewal of these permits. Our inquiry is, What power and authority did the city have over such renewals, and what rights, if any, did the petitioners have thereto? The problem is not new and the principles have been settled by this court.

■ In *Taylor* v. *Smith*, 140 Va. 217, 234, 124 S. E. 259, we said: "The right to use the streets of a city as a common carrier for hire is a privilege and not an inherent right, and may be granted or refused by the city, in the exercise of its police power, at its pleasure." This principle we reaffirmed in *Long's Baggage Transfer Co.* v. *Burford*, 144 Va. 339, 344, 132 S. E. 355. See also, *Ex parte Dickey*, 76 W. Va. 576, 85 S. E. 781, 782, L. R. A. 1915F, 840; 37 Am. Jur., Motor Transportation, sec. 22, p. 535.

■ *Ex parte Dickey, supra* (85 S. E., at page 782), distinguishes the radical difference between the right of a citizen to travel upon the highway and transport his property thereon, in the ordinary course of life and business, and that of one who makes the highway his place of business and uses it for private gain in the operation of a motor vehicle. "The former is the usual and ordinary right of a citizen, a common right, a right common to all, while the latter is special, unusual, and extraordinary. As to the former, the extent of legislative power is that of regulation; but, as to the latter, its power is broader. The right may be wholly denied, or it may be permitted to some and denied to others, because of its extraordinary nature. This distinction, elementary and fundamental in character, is recognized by all the authorities."

This reasoning and distinction we recognized and approved in *Taylor* v. *Smith, supra* (140 Va., at pages 236, 237); *Long's Baggage Transfer Co.* v. *Burford, supra* (144 Va., at pages 344, 345); *Thompson* v. *Smith*, 155 Va. 367, 377, 154 S. E. 579, 71 A. L. R. 604.

■ The fact that the plaintiffs in error had been granted annual permits to operate their for-hire vehicles over the city's streets in the past gave them no right to have them renewed. They accepted such permits knowing

that they were of short duration and that the city might lawfully decline to renew them.

It necessarily follows then that, since the petitioners had no inherent or vested right to a renewal of their permits, the city council deprived them of nothing when it refused such renewals. As the trial court aptly put it, "There is an obvious distinction between revoking a permit which has been granted and not giving a permit which can be rightly withheld. Petitioners have been deprived of nothing to which they are legally entitled. Under the law they have no more right to operate taxicabs in Danville than the present licensees. And the selection of the operators rests with the council. The fact that Dr. Fitchett and others have been granted permits takes nothing from them to which they are legally entitled, because they have no rights in this respect except such as are accorded them by the council."

It is argued that the council should have measured the qualifications of the various applicants by some standard, that it should have granted the permits of all applicants who complied therewith, and that its action in granting some applications and denying those of the plaintiffs in error was arbitrary, discriminatory and unlawful.

It is true that with respect to the ordinary useful occupations, in which every person has the right to engage, and which a municipality has merely the power to regulate and license, the city can not arbitrarily grant a license to one applicant and refuse it to another. It must license all applicants who are able to comply with the reasonable regulations and restrictions imposed upon the occupation. 38 Am. Jur., Municipal Corporations, sec. 332, p. 23.

But it is equally well settled that where the business is of such a character that the municipality, in the exercise of its police power, has the right to prohibit it entirely, it may, in its discretion, and for the purpose of promoting the public interest and welfare, limit the number of those who may engage therein, granting the application of one and denying that of another. 38 Am. Jur., *supra*, sec. 332, pp.

23, 24. And as we have already seen, the latter principle applies to the issuance of licenses by a municipality for the right to operate a for-hire vehicle over its streets. *Ex parte Dickey, supra; Taylor* v. *Smith, supra; Long's Baggage Transfer Co.* v. *Burford, supra.*

It should be noted that there is here involved no question of the delegation of authority by the legislative branch of a municipality to one of its administrative officers, as was involved in *Thompson* v. *Smith, supra,* and *Assaid* v. *Roanoke,* 179 Va. 47, 18 S. E. (2d) 287. Under the terms of the ordinance, the determination of the matter is reserved to the city council itself, to which the General Assembly, through the city charter, has delegated such supervision and control of the city's streets (Acts of Assembly, 1889-90, ch. 262, ch. VI, sec. 13, p. 416) and the right to enact such laws, "necessary for the good order and government of the city, the management of its property, the conduct of its affairs, the peace, comfort, order, health, and protection of its citizens and their property." (*Idem,* ch. VII, sec. 6, p. 424.)

But whatever may have been the council's lawful rights or discretion in the matter, the record here does not bear out the contention of the plaintiffs in error that that body acted arbitrarily in denying their applications. It clearly appears that the plaintiffs in error, while operating under their permits in 1944, had not given efficient and satisfactory taxicab service. This condition was well known to the members of the city council and was discussed and considered by them in passing upon the applications for the renewal of the permits of these operators. Moreover, there were considerations which led the council to believe that more efficient service would result by limiting the operation of such vehicles to a single person, or at least to a small group. The various applications, including those of the plaintiffs in error, were referred to a special committee, composed of the mayor, police justice, and chief of police, which reported its recommendations to the council. The whole matter was fully discussed and considered by the

council, both formally and informally, and on three separate occasions the plaintiffs in error were permitted to be heard, both in person and by counsel, on their applications. There is in fact, then, no basis for the contention that the council acted arbitrarily in the matter.

We agree with the trial court that we need not stop to consider whether the particular provisions of the ordinance which the plaintiffs in error challenge are valid or invalid. Even if it be true, as they argue, that the standard prescribed in the ordinance for the guidance of the council in determining which applications for permits should have been granted and which should have been denied is too vague and indefinite (as to which we express no opinion), yet the elimination of such provisions would not require the renewal of the permits of the plaintiffs in error. Under the provisions of the former ordinance these permits expired on December 31, 1944, and whether they should have been renewed was a matter for the determination of the council in the exercise of its discretion.

Furthermore, the ordinance, in express terms, prohibits the operation of for-hire vehicles on the city's streets unless and until a certificate of public convenience and necessity and a license therefor have been issued to the owner of the vehicle by the city council. This prohibition is clearly severable from the administrative provisions of which the plaintiffs in error complain, and even if the latter were constitutionally defective, under well-settled principles the prohibition would stand. *Chesapeake, etc., Canal Co.* v. *Great Falls Power Co.*, 143 Va. 697, 705-6, 129 S. E. 731 (certiorari denied, 270 U. S. 650, 46 S. Ct. 350, 70 L. Ed. 780), and authorities there cited; 11 Am. Jur., Constitutional Law, sec. 152, p. 834 *ff.* Hence, as the trial court held, the operation by petitioners of their vehicles in the city after December 31, 1944, would be unlawful.

Nor do we find it necessary to determine whether in passing upon the applications for permits, the council strictly followed the terms and provisions of the ordinance, for it

does not follow that such a compliance would have resulted in the renewal of the permits of the plaintiffs in error.

On the whole, we find no error in the judgment complained of, and it is

*Affirmed.*