### ELK CITY et al. v. ESTES.
#### No. 35743.

Supreme Court of Oklahoma.
Oct. 6, 1953.

Donald Royse, Holland Meacham and L. G. Brewer, Elk City, for plaintiffs in error.

Orval Grim, Sayre, for defendant in error.

BLACKBIRD, Justice.

Defendant in error is the operator of a taxicab business in Elk City, Oklahoma, under an annual license issued to him as provided by an ordinance of said city. In this action he sought a writ of mandamus as plaintiff compelling the plaintiffs in error, members of the city council of said city and other city officials, as defendants, to renew said license. The trial court granted the writ, and the latter have lodged this appeal.

The ordinance in question is Article 4, Sec. 592, entitled "Public Service Vehicle." Paragraph (b) thereof deals with the licensing of "Taxi Cab Drivers" and provides, among other things, that:

"No person shall drive any taxi * * * who shall not first obtain a license *therefor* from the city. Said person desiring to engage in the *work of driver of* a public service (vehicle) shall apply to the city clerk for a license, and upon satisfying *said clerk* that he is a person of good character and competent to drive a vehicle over the streets of the city, and who shall deposit with said clerk the sum of three ($3.00) dollars, said clerk shall thereupon issue a driver's license to said person, good until the first day of May after the issuance of same." (Emphasis added.)

Paragraph (d) of the same ordinance provides that if any such driver shall be found intoxicated, or shall violate any of the ordinances of the city, or the laws of the state, the (city) manager may, in his discretion, cancel and revoke the license.

Paragraph (g) of the same ordinance deals with "License Fee for Livery Vehicle" and provides that "an annual license fee of five dollars shall be paid to the city clerk for each vehicle *used for hire* in the transfer of passengers, herein designated as taxicab or jitney vehicle within the city." (Emphasis added). Paragraph (j) provides that any person violating any of the above provisions shall be deemed guilty of an offense, and, upon conviction thereof, be punished accordingly and in addition may have his license revoked by the "commission." In addition, another ordinance, termed "Taxi Cab Ordinance" requires that before any license is issued for a taxi cab or livery car, the owner shall file with the City Clerk, to be approved by the commission, a public liability and property damage insurance policy described therein.

The parties will hereinafter be referred to as they appeared in the trial court. From the pleadings filed and the stipulation entered into at the beginning of the trial, it appears that when the plaintiff applied for the renewal of his license, the defendants requested him to obtain approval and recommendation for such renewal from the City's Chief of Police, and that when plaintiff was unable to obtain such recommendation and approval, his application was denied and the license fee tendered with his application was returned.

■ At the trial, defendants introduced evidence calculated to prove that plaintiff had been guilty of violating various state laws and city ordinances, most of which did not pertain to the operation of a motor vehicle, but such evidence tended to make him appear an undesirable character. Apparently the trial court was of the opinion, when it granted the writ, that such facts had nothing to do with plaintiff's right to the renewal of his license. Defendants maintain that the Court erred in this, and they argue that their refusal to renew his license was justified under Article 4, Section 592(j), above described. We do not agree. The only requirements said ordinance makes for the mere operation of a taxi business, as distinguished from the driving of a taxicab, is that the owner shall have the insurance described therein and pay $5 to the city clerk for a license fee. All other provisions, including the one vesting the City Manager with discretion to cancel and revoke a license, deal with drivers of taxicabs.

■ In another proposition, defendants contend, however, that even if the

provisions of the article giving the City Clerk and City Manager discretion in the matter of issuing and/or revoking licenses, do not apply to non-driving taxicab operators (such as the plaintiff), refusal to renew plaintiff's license was within the discretion of the governing body of the City because of a city's broad powers in the regulation of the use of its streets. They cite McQuillin on Municipal Corporations (3rd Ed.) Vol. 7, page 709, Sec. 24.661, and Vol. 9, page 429, Sec. 26.178, as authority for the proposition that no one has an inherent or vested right to operate taxicabs on a city's streets, which is a privilege the municipality "in exercise of its discretion may grant or refuse." The learned authority goes on to say that: "While the right to use streets is a common right inhering in all the public, the right to use streets for business purposes is a special and limited right resting on franchise, permit or the like, and this is true with respect to the operation of taxi cabs." While we do not doubt the correctness of the proposition asserted, yet, it is equally true that when a city has exercised its right to regulate the operation of taxicabs on its streets by city ordinance and the applicant for a license or permit provided in such ordinance has complied with the requirements thereof, he is entitled to the issuance of such a license, where, under the terms of the ordinance, the issuing official or board is granted no discretion in the matter. See In re Silverman, 183 Misc. 264, 49 N.Y.S. 2d 179, and other authorities cited in McQuillin, supra, Vol. 9, Sec. 26.178, at Notes 79 and 87, pages 430 and 431. Where an ordinance undertakes to specify the conditions of the granting of such a license and the applicant meets and fulfills such conditions, then the issuing officer or agency has no discretion to refuse a license for causes not set out in such ordinance or other governing legislation. Defendants cite certain excerpts from Kizee v. Conway, 184 Va. 300, 35 S.E.2d 99, which, when considered out of context, would seem to add some support to their position. However, that case is not in point and merely deals with the constitutionality of a city ordinance providing for the licensing of taxicabs.

Defendants further contend that the trial court erred in excluding evidence concerning whiskey raids on the plaintiff's business premises and criminal charges filed against him for liquor violations. Their position is that any evidence tending to reflect on plaintiff's character or reputation was admissible, but as we have interpreted the licensing ordinance in question, this view is obviously untenable.

It is also said that the remedy of mandamus is not proper herein because plaintiff established no clear legal right to the license he sought. This argument seems to be founded upon the inconsistent theory that Elk City has no ordinance providing for the licensing of a taxicab business or a non-driving taxicab operator, as distinguished from a taxicab driver. If this was the situation it would not have been necessary for plaintiff to have the particular involved license in the first instance. It is not contended that plaintiff had an adequate remedy other than mandamus and the authorities are practically unanimous in holding that mandamus is the proper one for the right he asserted, and which we have determined that, under the terms of the governing ordinance, the defendants had no discretion to refuse. See the authorities cited in American Jurisprudence, Vol. 34, page 958, Sec. 184, under Notes 6 and 12, Vol. 38, page 67, Sec. 379, and cases cited in Vol. 9A, Oklahoma Digest, under Mandamus, ▮

In accord with the above views the judgment of the trial court is hereby affirmed.

HALLEY, C. J., JOHNSON, V. C. J., and CORN and WILLIAMS, JJ., concur.

WELCH, DAVISON and O'NEAL, JJ., dissent.