Corrao, Respondent, vs. Mortier and others, Appellants.

*May 9—June 3, 1958.*

For the appellants there was a brief by *Walter J. Mattison,* city attorney, and *Ewald L. Moerke, Jr.,* assistant city attorney, and oral argument by *Mr. Moerke.*

For the respondent there was a brief by *Wiernick & Zurlo,* attorneys, and *Clinton A. Boone, Jr.,* of counsel, all of Milwaukee, and oral argument by *Mr. Boone.*

FAIRCHILD, J. We conclude that defendants were not entitled to summary judgment. This opinion is grounded upon the proposition that the city's ordinance accords the holders of permits a right to renewal in the absence of reasons for refusal to renew. We reject the proposition that the

holder of a permit has no different right with respect to the matter of a renewal than a new applicant with respect to the initial issuance of a permit.

The common council has undoubted power to regulate and license the taxicab business. Sec. 85.82, Stats. The public interest will be served by attention to the condition of equipment, the responsibility of the operators, the adequacy of service, and the effect upon traffic, among other considerations. We agree with the city attorney that the common council, at the outset, had the broadest sort of discretion in deciding how many and which applicants should be licensed.

The council has adopted certain ordinances in the exercise of this power. They require that the owner of a taxicab must install certain equipment and furnish adequately safe service at just and reasonable rates. Every taxicab must bear certain markings and may not use the streets without first obtaining a permit from the council. The ordinance reaffirms the power which the council would have in any event to issue or refuse any such permit as the public welfare, convenience, or necessity may require and provides that the council shall refuse to issue a permit when it shall find that transportation facilities already available are adequate to meet the public need. The ordinance sets up a standard as to when such facilities are adequate—the standard being met when there is one taxicab in the city for each 1,175 inhabitants. The ordinance also provides that "from and after enactment hereof, not less than 41 taxicab permits shall be issued to applicants, otherwise qualified, and who reside within the city of Milwaukee, and have resided within said city of Milwaukee for two years prior to the filing of said application, and who have been honorably discharged from service in the armed forces of the United States, during World War I or II, if such honorably discharged veteran applicant shall have filed an application with the city clerk

for such permit." The ordinances just referred to are numbered secs. 100–50, 100–51, and 100–54, ch. 100, Milwaukee Code of Ordinances.

Ordinance, sec. 100–57, provides as follows:

"Whenever any applicant for a permit shall have complied with all conditions and regulations relative to the filing of his application, it shall be the duty of the city clerk to forward said application to the common council at any regular or special meeting called for that purpose. Such application shall be referred to the committee for the purpose of having a hearing thereon to determine the public convenience and necessity as hereinafter set forth. Notice of said hearing shall be given to all persons interested, including the owner of the vehicle, at least five days before the date set for such hearing. The kind of notice, the place of hearing, and all facts connected with or relating to such hearing shall be regulated by the committee."

Sec. 100–59 provides as follows:

"All permits now or hereafter issued by the common council may be renewed from year to year upon payment of the annual permit fee; provided that if charges are filed with the common council against any permit holder, such permit shall not be granted until after a hearing is had and affirmative action taken by the common council as in the case of original applications. Whenever charges are filed against any permit holder a temporary permit shall be issued by the city clerk to permit operation pending final action by the common council."

Having enacted a system for the handling of the licensing of the taxicabs, the common council has bound itself, until it changes these ordinances, to act in accordance with their provisions.

We construe sec. 100–59 as providing that one who holds a permit for one year has a right to a renewal of it as a matter of course for the next year unless charges are filed and a hearing had. The key to the interpretation is the

phrase, "may be renewed." Does it mean that the permit holder may cause renewal simply by payment of a fee or does it merely authorize the council to waive hearing and determination of public convenience and necessity if the council sees fit? We are persuaded to adopt the former construction for three reasons:

1. If sec. 100–59 is not a limitation upon the broad discretion of the council in the matter of licensing, it would appear to be either a grant or a confirmation of power which the council already had and it would virtually be useless verbiage.

2. The second sentence of sec. 100–59 clearly gives the permit holder the right, if charges are filed against him, to a temporary permit pending final action by the council. If sec. 100–59 does not limit the discretion of the council and permits it to cause the permit to expire by failure to act, then a permit holder against whom a charge has been filed is to receive better treatment than one against whom no charge has been lodged. We think this sentence suggests that only final disposition by the common council of charges filed is to terminate a permit which has once been granted as long as the permit holder pays the necessary fee.

3. There is authority applicable at least to businesses not as directly affected with a public interest as the taxicab business that a refusal to renew is virtually equivalent to a revocation. Two decisions of the supreme court of Iowa illustrate this principle.

*Gilchrist v. Bierring* (1944), 234 Iowa, 899, 914, 915, 14 N. W. (2d) 724, 732:

"Where the state confers a license to engage in a profession, trade, or occupation not inherently inimical to the public welfare, such license becomes a valuable personal right which cannot be denied or abridged in any manner except after due notice and a fair and impartial hearing before an unbiased tribunal. . . .

"The state cannot, by issuing only annual licenses, ingeniously thwart these precious rights. . . . This is also true of the right to pursue any other lawful business or vocation as well as a profession."

*State ex rel. Bierring v. Swearingen* (1946), 237 Iowa, 1031, 1037, 22 N. W. (2d) 809, 812:

". . . the board, before denying the licensee [a barber] a renewal of his license, must give him notice and an opportunity to be heard."

In the absence of sec. 100–59 there might be applicable the following statement of the court of appeals of Virginia:

"The fact that the plaintiffs in error had been granted annual permits to operate their for-hire vehicles over the city's streets in the past gave them no right to have them renewed. They accepted such permits knowing that they were of short duration and that the city might lawfully decline to renew them.

"It necessarily follows then that, since the petitioners had no inherent or vested right to a renewal of their permits, the city council deprived them of nothing when it refused such renewals. . . . Under the law they have no more right to operate taxicabs in Danville than the present licensees. And the selection of the operators rests with the council." *Kizee v. Conway* (1945), 184 Va. 300, 306, 35 S. E. (2d) 99, 102.

We are of the opinion that the present ordinance, in particular, sec. 100–59, grants a superior status to applicants for renewal as compared with the status of a new applicant and that this ordinance limits the discretion which the common council might otherwise have to treat each application as an entirely new matter at the beginning of each permit year. The ordinance should be given effect even though the limitation is self-imposed and could be repealed. It follows that the defendants have made no showing sufficient to entitle them to summary judgment.

There are a number of other issues suggested by this record: Whether, if all else had been proper at the hearing on June 26th, plaintiff was entitled to notice of the committee meeting on July 10th at which the committee made its decision; whether plaintiff had the right to examine the members of the council as to the thinking processes by which they reached their decision and whether in this particular type of matter the committee members could properly consider information which came to them out of the presence of the applicant. We do not deem it necessary to pass upon these questions since it quite clearly appears that in the absence of charges and a hearing thereon, plaintiff was entitled to a renewal of his permit.

*By the Court.*—Order affirmed.