# Richmond

## C. A. ASSAID v. CITY OF ROANOKE.

January 19, 1942.

Record No. 2505.

Present, All the Justices.

The opinion states the case.

*Walter H. Scott*, for the plaintiff in error.

*C. E. Hunter*, for the defendant in error.

CAMPBELL, C. J., delivered the opinion of the court.

Plaintiff in error (called defendant) was convicted upon a warrant issued and tried by the police justice of the city of Roanoke, which charged that he "did unlawfully operate a billiard saloon or pool room without first obtaining a license so to do, contrary to Roanoke city ordinance."

Upon appeal to the Hustings Court, the judgment was affirmed.

This writ of error challenges the validity of the city license ordinance, which is as follows:

*"Billiard, Pool or Bagatelle Tables.* (a) On each person keeping a billiard saloon, or pool room . . . $50.00 and an additional tax of . . . $20.00, for each table, exceeding one in such room capable of being used, whether used or not. Not proratable. * * *

"This license shall be a personal privilege and shall be granted and transferred only upon the order of the City Manager."

It is claimed that the ordinance is void for the reason that it confers upon the city manager, without notice or a hearing, the arbitrary power to grant or refuse a license to conduct a pool room in the city, and that such a power is an unlawful delegation of legislative authority and is violative of constitutional rights, both Federal and State.

The facts are undisputed. Plaintiff in error, a citizen of the city of Roanoke, had for a period of years (including the year 1940), conducted a pool room in the city. In January, 1941, he applied for a State and city license to conduct a pool room, as he had done in the year 1940.

The commissioner of the revenue issued to him a State license to conduct a pool room, but the city manager refused his application to obtain a city license, without assigning any reasons therefor. The record in the criminal prosecution, however, does show that the city license was refused by the city manager, on the ground that defendant had several times previously been convicted upon warrants charging him with a violation of the statute against gambling.

The contention of counsel for the city is that the ordinance

is a valid enactment in conformity with the exercise of the police powers granted the city by its charter provisions.

It must be conceded that, under the police power with which the city is invested, it had the unquestioned power to legally regulate the granting of a license to conduct a pool room, or even to prohibit the operation of a pool room in the city. However, the exercise of the police power must be a valid exercise thereof, and when in its exercise it encounters the barriers erected by the State and Federal Constitutions, it can proceed no further.

In *Thompson* v. *Smith*, 155 Va. 367, 154 S. E. 579, 71 A. L. R. 604, Mr. Justice Epes said:

"It is a fundamental principle of our system of government that the rights of men are to be determined by the law itself, and not by the let or leave of administrative officers or bureaus. This principle ought not to be surrendered for convenience or in effect nullified for the sake of expediency. It is the prerogative and function of the legislative branch of the government, whether State or municipal, to determine and declare what the law shall be, and the legislative branch of the government may not divest itself of this function or delegate it to executive or administrative officers."

It is by this legal tape that the rights of the defendant are to be measured. When the tape is placed upon the ordinance in question, it clearly appears that it violates Article I, section 11 of the Virginia Constitution and the 14th Amendment to the Constitution of the United States, by reason of its failure to provide for notice and hearing, by undertaking to make the determination of the city manager final and unreviewable, and by not providing for a judicial review thereof.

If we extend the analysis of the ordinance, it is plain that it arbitrarily empowers the city manager, if he be so inclined, to refuse an ecclesiastic applying for a license to conduct a pool room, and to grant a license to the most notorious criminal in the city. It further empowers the city manager to deny to the one-time gambler the right to show, if he can do so, that he has reformed.

The legality of the ordinance is to be tested not by what has been done under it, but by what may, by its authority, be done.

It further appears, from an analysis of the ordinance, that it delegates legislative authority to a ministerial officer. It is true that the law-making body may make a legislative determination under the police power, without notice and hearing to the person affected, but the legislative body has no power to delegate to a board or an administrative officer its own power to act, without notice and hearing. This was specifically held in *Thompson* v. *Smith, supra.*

The question there involved was the validity of a city ordinance which empowered the chief of police "To revoke the permit of any driver *who in his opinion.* becomes unfit to drive an automobile on the streets of the city."

In the opinion this is said:

"That portion of the ordinance here in question which authorizes the chief of police 'to revoke the permit of any driver who, in his opinion, becomes unfit to drive an automobile on the streets of the city', fails to declare the policy of the law and fix the legal principles which are to control the discretion of the chief of police in the revocation of licenses in determining what constitutes unfitness to drive an automobile on the streets of the city; and is void because it delegates powers essentially legislative to an administrative officer."

This rule is in conformity with the decisions of the Supreme Court of the United States.

In *Washington ex. rel. Seattle Title Trust Co.* v. *Roberge,* 278 U. S. 116, 49 S. Ct. 50, 73 L. Ed. 210, the Supreme Court, contrary to the holding of this court in *Martin* v. *City of Danville,* 148 Va. 247, 138 S. E. 629, held invalid a zoning ordinance of Seattle, which undertook to delegate to the consent of the owners of two-thirds of the property within 400 feet of a proposed building, the determination of the right of an individual to erect said building. In holding the ordinance invalid, the court said:

" * * * Legislatures may not, under the guise of the

police power, impose restrictions that are unnecessary and unreasonable upon the use of private property or the pursuit of useful activities. (Citing many cases.) * * *

"The section purports to give the owners of less than one-half of the land within 400 feet of the proposed building authority—uncontrolled by any standard or rule prescribed by legislative action—to prevent the trustee from using its land for the proposed home. The superintendent is bound by the decision or inaction of such owners. There is no provision for review under the ordinance; their failure to consent is final. They are not bound by any official duty, but are free to withhold consent for selfish reasons or arbitrarily, and may subject the trustee to their will or caprice. *Yick Wo* v. *Hopkins*, 118 U. S. 356, 368 * * * The delegation of power so attempted is repugnant to the due process clause of the 14th Amendment. *Eubank* v. *Richmond*, 226 U. S. 137, * * * *Browning* v. *Hooper*, 269 U. S. 396, * * * ."

In *Yick Wo* v. *Hopkins*, 118 U. S. 356, 6 S. Ct. 1064, 30 L. Ed. 220, the Supreme Court dealt with the question of a delegation of police powers. An ordinance of the city and county of San Francisco provided that it was unlawful for a person to engage in the laundry business "without having first obtained the consent of the board of supervisors, except the same be located in a building constructed either of brick or stone." In holding the ordinance invalid, the court said:

"The power given to them is not confided to their discretion in the legal sense of that term, but is granted to their mere will. It is purely arbitrary, and acknowledged neither guidance nor restraint. * * *

"When we consider the nature and the theory of our institutions of government, the principles upon which they are supposed to rest, and review the history of their development, we are constrained to conclude that they do not mean to leave room for the play and action of purely personal and arbitrary power."

It may be contended that defendant has no right of property in a pool room license. Whether or not this contention be sound is not here involved. He certainly had the right

to know the reason for his condemnation, and this reason should not be couched in generalities, but should be conveyed to him in a legal and orderly manner.

Mr. Justice Frankfurter, in a dissenting opinion which was concurred in by Mr. Chief Justice Stone, Mr. Justice Roberts and Mr. Justice Byrnes, in *Bridges* v. *State of California* (U. S.), 62 S. Ct. 190, decided December 8, 1941, quotes with approval this language from the Massachusetts Declaration of Rights:

"It is essential to the preservation of the rights of every individual, his life, liberty, property, and character, that there be an impartial interpretation of the laws, and administration of justice. It is the right of every citizen to be tried by judges as free, impartial and independent as the lot of humanity will admit."

While the Virginia Bill of Rights does not in explicit language guard the preservation of a citizen's character, it does say that all men have an inherent right to "the enjoyment of life and liberty, with the means of acquiring and possessing property, and pursuing and obtaining happiness and safety."

What will it profit a man if he acquires and possesses property untold, if by the arbitrary act of an administrative officer, his character may be destroyed and he may thus be robbed of the enjoyment of life and the pursuit of happiness?

In *Underwood* v. *McVeigh*, 23 Gratt. (64 Va.) 409, Judge Christian promulgated a great principle when he said: "It lies at the very foundation of justice, that every person who is to be affected by an adjudication should have an opportunity of being heard in defense, both in repelling the allegations of fact, and upon the matters of law * * * ."

Our conclusion is that the ordinance under which the defendant was tried and convicted is invalid.

It follows, therefore, that the judgment of the lower court will be reversed and annulled, and an order will be entered in this court discharging the defendant from further custody.

*Reversed.*