# 𝔖taunton

W. R. Moore, Commissioner, etc. v. Jack W. Sutton.

September 11, 1946.

Record No. 3028.

Present, Holt, Hudgins, Gregory, Browning, Eggleston and Spratley, JJ.

The opinion states the case.

*Breeden & Hoffman, Abram P. Staples, Attorney General,* and *Edwin B. Jones, Assistant Attorney General,* for the plaintiff in error.

*W. L. Devany, Jr.,* for the defendant in error.

BROWNING, J., delivered the opinion of the court.

This case grows out of the application of Jack W. Sutton, the defendant in error, to the commissioner of revenue of the city of Norfolk, for a license to engage in the business of a photographer in that city. The license was refused because the applicant had not complied with the requirements of an act regulating the practice of photography. He presented to the court a petition for a manda-

mus to compel the issuance of the license upon the payment of the appropriate fee exacted by the tax codes. The trial court issued the writ after hearing the evidence and argument of counsel. It is before us upon a writ of error.

The constitutionality of the act which is known as the Photographic Examiners Act is questioned. It consists of Chapter 342 of the Acts of the General Assembly of 1938 (Chapter 175D of Michie's Code of Virginia).

It is deemed unnecessary to quote the statute or any of its sections in full.

It is perhaps enough to say that its provisions require every person desiring to commence the practice of photography or any of its branches, for compensation or profit, or in the hope of such reward, to file an application for a certificate of registration with the board on a form furnished by it. He shall submit to an examination by the board to determine his qualifications. Before admitting any person to an examination the board shall require reasonable evidence of the technical qualifications of the applicant. A fee of $25.00 shall be paid to the board by each applicant for an examination, to be reduced to $15.00, for a lesser privilege than the general practice of photography. There are certain exemptions to the operation of the statute which need not be stated as well as some details which are unimportant to our consideration.

The board is composed of five members, appointed by the Governor, each of whom is a resident of the state of Virginia, and shall have not less than five years experience as a professional photographer or photo-finisher. This is the first challenge of the act to reach this court.

In approaching the consideration of the subject let us say that we are not unmindful of the fact that the modernistic trends, the complexity of industrial and social interests and the ever increasing growth of human needs, demand a much less rigid adherence to constitutional inhibitions than formerly obtained; that the courts may not intrench upon the legislative right to determine the wisdom or lack of it, of its enactments; that the presumptions favor

the constitutionality of a legislative act. Even so, when the legislature exceeds its authority and patently goes beyond the margin delimited by the Constitution it becomes the bounden duty of the courts to step into the breach and save that muniment of government which is the state's pillar of strength.

Appended to the brief of the defendant in error is a copy of the opinion of the eminent Judge of the Corporation Court of the City of Danville, in the case of the *Commonwealth* v. *Walton*, from which no appeal seems to have been had.

In that case the precise act, with which we are concerned, was assailed on the same grounds as are here urged.

It was impressively said:

" * * , if the fact of enactment itself concluded all questions of its constitutionality, the Constitution would amount to no more than an abstract and oratorical statement of human rights; a creed to be recited, but not believed in.

"Upon the most careful consideration of which I am capable, I fail to see that the public health, the public safety, the public morals or the general welfare, regarding that term in its widest significance, can be promoted by requiring a photographer who makes pictures of human beings to take an examination before practicing his trade or profession."

Each of the above objectives are here urged as compelling reasons why the constitutionality of the act should be upheld. Its advocates apparently find comfort under the protecting wings of the police power of the state.

██ We do not think the business or trade, and its incidents, and those who practice it, and who are sought to be protected by the act, furnish any justification for invoking such power.

██ It does not appear, in our opinion, that the public health, the public safety, the public morals or any public interest, is so interwoven with or affected by the occupation of photography as to furnish any rational basis for

urging that, under any conception of the police power, the legislature may lift an ordinary calling or business out of its natural channel and setting and clothe it with a public welfare vesture, so as to render nugatory a solemn constitutional inhibition.

One of the best reasoned cases we have crossed is *State v. Cromwell*, 72 N. D. 565, 9 N. W. (2d) 914, 921, in which it is said:

"Why is the business of photography any more charged with the possibility of harm to the public or to any individual than is any other of the ordinary occupations in which men engage. After all, the portrayal of subjects, animate or inanimate, is not new. It has been done since that remote time when Ab the cave man scratched his crude drawings of the sabertoothed tiger and the mastodon on the rock walls of his primitive dwelling. And modern man aided by chemistry and physics merely has so mechanized the process during the last hundred years as to make it possible for a much larger proportion of his fellows to make use of it and called it photography. So far as knowledge, training and skill are concerned, whether acquired from books or thru practice and experience, it cannot be gainsaid that they are required by the farmer, the storekeeper, the carpenter, the machinist, the tailor, the actor, the musician—in fact by every individual successfully engaged in a definitely specialized occupation, be it called a trade, a business, an art or a profession. And there is as much ground for requiring a mental and moral examination preliminary to licensing those who may engage in any of these occupations as there is for those who engage in the business of photography, yet, who would maintain that such a requirement would be reasonable? Nor does it seem to us that photography affords such peculiar opportunities for fraud as to require the safeguards purportedly provided by this regulatory statute. We cannot see why there is greater opportunity in this business to defraud the individual or the public generally than there is in any of the other ordinary occupations. Every occupation affords some opportunity

for fraud, yet, on that account, should no one be permitted to engage in any business or occupation unless his good character, his ability, his learning and his skill first have been shown by examination to the satisfaction of a board composed of those who will be his competitors if he is licensed by them?"

The observations just quoted are as apt and fit here as there. We are quite won by their force and convincingness.

This court said in *Young* v. *Commonwealth*, 101 Va. 853, 862, 45 S. E. 327, speaking of the word "liberty", as used in our Constitution:

" * * * * , means more than mere freedom from restraint. It means not merely the right to go where one chooses, but to do such acts as he may judge best for his interest, not inconsistent with the equal rights of others; that is, to follow such pursuits as may be best adapted to his faculties, and which will give him the highest enjoyment. The liberty mentioned is deemed to embrace the right of the citizen to be free in the enjoyment of all his faculties; to be free to use them in all lawful ways; to live and work where he will; to earn his livelihood by any lawful calling, and for that purpose to enter into all contracts which may be proper, necessary, and essential to his carrying out to a successful conclusion the purpose above mentioned. These are individual rights, formulated as such under the phrase 'pursuit of happiness' in the Declaration of Independence, which begins with the fundamental proposition that all men are created equal; that they are endowed by their Creator with certain inalienable rights; that among these are life, liberty, and the pursuit of happiness. *Powell* v. *Pennsylvania*, 127 U. S. 678, 8 S. Ct. 992, 1257, 32 L. Ed. 253; *Allgeyer* v. *Louisiana*, 165 U. S. 578, 17 S. Ct. 427, 41 L. Ed. 832; *People* v. *Gillson*, 109 N. Y. 389, 17 N. E. 343, 4 Am. St. Rep. 465; *State* v. *Dalton*, 22 R. I. 77, 46 A. 234, 84 Am. St. Rep. 818, 48 L. R. A. 775."

We are not adventurous and bold enough to say that the present statutory set up does not offend these wholesome conceptions. It does, grievously.

The case of *Territory* v. *Kraft*, 33 Haw. 397, 407, is another well considered case. The territory of Hawaii urged that unless the business of photography was restricted persons unskilled in the art might impose upon the public by taking pictures of inferior quality or by taking a deposit on orders for the enlargement of photographs, which orders are never filled. That court, after observing that the police power has an ever widening horizon, further said:

"A like argument must have been made, but without success, in the horseshoeing case and also without success in the accounting case. If this should be held to be a sound argument the police power could be used to lay upon any business, however unrelated to the general welfare, burdensome and unreasonable restrictions. This would be to extend this great power beyond its recognized limits and to convert it from a shield into a sword. Instead of furnishing needed protection to the public it would, as in the instant case, confer upon a board of examiners, composed entirely of professional photographers, the power to grant to a selected number the right of pursuing a useful and innocent business. This would be to create a monopoly and thus exclude from the business many competent persons who might find in it a congenial occupation and a means of livelihood."

So far as we have been able to learn the precise question has arisen in five jurisdictions, Arizona, Georgia, Hawaii, Tennessee and North Carolina. A similar statute has been pronounced unconstitutional in four of them by their courts of last resort.

North Carolina in *State* v. *Lawrence*, 213 N. C. 674, 197 S. E. 586, 116 A. L. R. 1366, alone has struck a discordant note, but in a subsequent case, dealing with an act regulating the dyeing and cleaning trade, it recedes from its former position, holding that act unconstitutional. *State* v. *Harris*, 216 N. C. 746, 6 S. E. (2d) 854, 128 A. L. R. 658. Justice Seawell wrote the opinion in the latter case and it is noteworthy that he wrote the dissenting opinion in the former case.

In Am. Jur. Vol. 11, p. 1147, section 336, is this:

"The right to earn a livelihood by following the ordinary occupations of life is protected by the Constitution; such protection is particularly found in the guaranties of the Fourteenth Amendment. It has been said that the preservation of such right is the principal purpose of the Constitution itself and is of the very essence of the personal freedom and opportunity that it was the purpose of the Fourteenth Amendment to secure. The right is fundamental, natural, inherent, and inalienable, and is one of the most sacred and most valuable rights of a citizen. A person's business, occupation, or calling is 'property' within the meaning of the constitutional provisions as to due process of law and is also included in the right to liberty and the pursuit of happiness.

"The right of a person to pursue a calling, consistent with proper and reasonable police regulations which the particular situation may sanction, cannot be taken away by legislative enactment. The common businesses and callings of life, the ordinary trades and pursuits which are innocent in themselves and which have been followed in all communities from time immemorial, must, therefore, be free in the United States to all alike upon the same terms. Any person is at liberty to pursue any lawful calling, under such restrictions as are imposed upon all persons of the same age, sex, and condition. It is not competent, generally speaking, to forbid any person or class of persons, whether citizens or resident aliens, to offer their services in lawful business or to subject others to penalties for employing them. Moreover, it has been held that the right to choose one's occupation includes the right to be free from unlawful interference or control in the conduct of it."

Perhaps we should note more specifically that the plaintiff in error, really the State, urged the point, and there was evidence upon which to base it, that objectionable conditions, which had obtained before the adoption of the act, such as fraudulent practices, inartistic work, and danger from poison and combustion, on account of the unintelligent use of chemicals and the like, had been largely overcome by the

beneficent effects of the statute. Admitting this to be so, still the act is not saved from its vulnerability to the challenge of its constitutionality. The learned judge of the trial court submitted an excellent opinion which is a part of the record and which successfully fortifies his judgment.

He quotes from 12 Corpus Juris, 907, 908, as follows:

"The Constitution presupposes the existence of the police power and is to be construed with reference to that fact."

He says further:

"This so-called 'police power' is an elastic power, but it falls short of being a limitless power. It ends where the reasonable necessity for legislation to protect the morals, health, safety and general welfare of the public ends. It extends no further. Any effort to extend it is violative of the constitutional rights of the citizen.

Continuing, he says:

"The test to be applied is whether the Act is one in the interest of the public health, morals, safety, or the general welfare. If it is not it exceeds the police power and for that reason is invalid.

"It is true that the effect of the Act is to protect the industry and it is equally apparent that it in no sense involves consideration of the public health, morals, safety, or the general welfare.

"If the Legislature may for the sole purpose of preventing unfair advertisements, solicitations, bad workmanship, and unscrupulous dealing, pass laws to limit a given business to those who are found to be honest and competent, then there would be no business which would be immune from such prohibitory legislation.

"The criminal law, as well as the general law of contracts, furnish protection to any customer who happens to become a victim in dealing with a photographer.

"In short, the Act is in the interest of the industry just as the European Guild system of the Middle Ages was in the interest of its membership. Neither can be justified as a protector of the public interest."

We have said nothing about the federal constitutional as-

pect of the case because it is unnecessary as it is a state act with which we are dealing and also because the Supreme Court of the United States had before it a similar question in the case of *Nebbia* v. *New York*, 291 U. S. 502, 54 S. Ct. 505, 78 L. Ed. 940, 89 A. L. R. 1469, as to the significance of which, respectable authorities are at variance, and it is not obligatory upon us in this case to interpret its meaning and scope.

As is foreshown we think the act in question trespasses upon the rights of the citizen as guaranteed by the Constitution of Virginia, Article 1, Section 1. It is an unjustifiable encroachment and intrenchment upon those rights. We cannot shut our eyes to this fact and the statute must go the way of such offenders of the plain constitutional mandate, so vital to the welfare of a free and untrammeled people.

In this day of bureaucracies multiplied we are constrained to emphasize the virtue of a firm adherence to the philosophy that that state is best governed which is least governed.

The judgment of the court is plainly right and it is affirmed.

*Affirmed.*