# Richmond

## SEYMOUR H. CHAPEL v. COMMONWEALTH OF VIRGINIA.

October 10, 1955.

Record No. 4420.

Present, All the Justices.

The opinion states the case.

*Sacks & Sacks,* for the plaintiff in error.

*J. Lindsay Almond, Jr., Attorney General* and *C. F. Hicks, Assistant Attorney General,* for the Commonwealth.

HUDGINS, C. J., delivered the opinion of the court.

This writ of error brings under review a judgment imposing a fine of $25.00 upon Seymour H. Chapel, defendant, for engaging in the business of cleaning, dyeing and pressing without a license from the State Dry Cleaners Board, hereinafter designated Board.

The conceded facts are: Defendant's application to the Board for a license to permit him to accept and transport clothing or other fabrics to be cleaned, pressed, or dyed by someone other than himself was denied, on the ground that he did not do the work on his premises and did not have machinery for cleaning, dyeing and pressing. Thereafter, he obtained a license from the City of Norfolk to operate a cleaning and pressing collecting agency under the name of Chapel's Launderette. Under this license he accepted and transported clothing and other fabrics to be cleaned, pressed, or dyed as agent of Crown Cleaners, by whom and on whose premises clothes and fabrics were cleaned or dyed. Crown Cleaners is a reputable concern and duly licensed by the Board to conduct such business.

Defendant has no machinery to clean, press, or dye clothing. He did not, nor does he intend to, clean, dye or press any fabric. He merely desires to accept and transport fabrics to and from the premises of the Crown Cleaners Co., or the premises of some other licensed cleaner, by whom the fabrics are to be cleaned, dyed and pressed.

Defendant contends that Code Sections 54-201 to 54-216, under which he was convicted, are unconstitutional and void for several reasons, among them: (1) that the statute delegates to the Board, an administrative body thereby created, unconstitutional and arbitrary power to grant, refuse to grant, or revoke a license to conduct a dry cleaning business; and (2) that the statute makes an unreasonable and arbitrary classification as to its application.

The statute known as the Dry Cleaners Act was first adopted in

1936 (1936 Acts, 537) and with subsequent amendments is now codified in the 1950 Code under Title 54, Chapter 9. It creates a separate and independent administrative body for the purposes indicated in its title, which is: "An Act to regulate the business of cleaning, dyeing and pressing; defining what constitutes engaging in said business, as well as defining certain other words; creating a State Dry Cleaners Board; empowering and authorizing said board to promulgate rules and regulations; requiring the issuance of licenses by said board as a prerequisite to engaging in said business, and providing penalties for the violation of any of the provisions of this act; and providing that this act shall apply in all cities, and in any counties when two-thirds of the resident persons actively engaged in the cleaning, dyeing and pressing business in such counties petition the State Dry Cleaners Board to be entitled to the benefits of this act, then such counties shall be governed by this act."

The act defines the business of cleaning, dyeing and/or pressing and declares that it shall include ". . . the acceptance and transportation of any clothing, or other fabrics to be cleaned, pressed, or dyed, whether such service shall be rendered by the person so accepting and transporting such fabric or by others." Section 54-201.

Under this definition any person, a pedestrian, or the operator of a bicycle or delivery truck, who receives and transports "clothing or other fabrics" for compensation to and from a home or business establishment to a dry cleaning establishment operated by another, is engaged in the business of cleaning, dyeing and pressing, and before engaging in such activity must obtain a license to operate the dry cleaning business.

Ordinarily, no one would consider that the transportation of clothing or other fabrics for hire from one place to another constitutes engaging in the business of cleaning, dyeing and pressing. It is an ordinary, harmless activity which requires no special skill and may be performed by a mere errand boy. During the argument the Assistant Attorney General, in reply to a question, admitted this fact and said that the framers of the Act did not think it would be as effective if this provision were not included. No substantial reasons were advanced to support the contention that persons engaged in this activity should be required to obtain a dry cleaner's license and others engaged in transporting packages should not be so required. Such regulation constitutes an unconstitutional discrimination.

■ The State Dry Cleaners Board created by the Act consists of five members appointed by the Governor, three of whom shall have been engaged in the dry cleaning business for at least three years next preceding their appointment. Its function, duties and powers are thus stated:

"(1) To adopt and promulgate such rules and regulations as may be necessary to control and regulate the cleaning, dyeing and pressing business in the following particulars:

"a. Identification to the public of all persons licensed by the Board to engage in such business, as well as their agents or representatives.

"b. Prohibition of false or misleading statements, advertisements or guarantees either in form or content.

"c. Form of application required by the Board for a license and form of the license to be issued by the Board.

"(2) To grant licenses to conduct the business of cleaning, dyeing and pressing in accordance with the provisions of this chapter and the rules and regulations of the Board.

"(3) To require all persons, as a prerequisite to obtaining a license hereunder, to comply with such reasonable standards and requirements as may be deemed necessary by the Board for the protection of the public health and safety in connection with the business of cleaning, dyeing and pressing.

"(4) To enforce and assist in the enforcement of fire, sanitation, labor and any other laws applicable to the industry, and to require of such persons, firms, corporations or associations information and reports specified by law for this purpose.

(5) To act for the purpose of this chapter, as a competent authority in connection with the matters pertinent thereto."

Every applicant for an original license to engage in business must pay a fee of $25.00 and, thereafter, must pay an annual license tax, based on gross receipts, of $10.00 to $40.00. The license fees collected by the Board are deposited into the State treasury and disbursed by the direction of the Board for the purpose of administering, enforcing and effectuating the provisions of the act and rules and regulations prescribed by the Board. No part of the license fees may be used by the State for any other purpose. Section 54-208.

The statute not only delegates to the Board the right to promulgate rules and regulations controlling and regulating the dry cleaning business, but authorizes the Board to deny, suspend, or re-

voke a license of any person who fails to comply therewith. Doing business without a license is made a criminal offense punishable by a fine of not less than $10.00, nor more than $100.00, for each day a rule is violated. The Commonwealth, in support of the validity of the Act, argues that the dry cleaning business is a proper subject of legislation under the police power of the State to protect the public against fire hazard from the use of large quantities of volatile inflammable liquid used in the business, and because the collection of clothes and wearing apparel from persons in all walks of life and mingling them together in the same container may spread contagious diseases if not properly regulated. In other words, the contention is that the business is within that realm sometimes referred to as "a business affected with a public interest."

The question before the Court, however, is not whether the dry cleaning business is subject to reasonable rules and regulations, but whether the legislature has delegated to an administrative board the power to make rules and regulations without prescribing a standard or test to guide and control it in the exercise of such discretion. We said in *Thompson* v. *Smith*, 155 Va. 367, 379, 154 S. E. 579, 71 A. L. R. 604:

"It is a fundamental principle of our system of government that the rights of men are to be determined by the law itself, and not by the let or leave of administrative officers or bureaus. This principle ought not to be surrendered for convenience or in effect nullified for the sake of expediency. It is the prerogative and function of the legislative branch of the government, whether State or municipal, to determine and declare what the law shall be, and the legislative branch of the government may not divest itself of this function or delegate it to executive or administrative officers.

"This does not mean, however, that no discretion can be left to administrative officers in administering the law. Government could not be efficiently carried on if something could not be left to the judgment and discretion of administrative officers to accomplish in detail what is authorized or required by law in general terms. . . .

"In principle, legislation and administration are quite distinct powers; but in practical application the line which separates their exercise is not clearly marked or easily defined. However, in their definition in practical application lies the difference between government by legislation and government by bureaucracy, which, though contrary to the genius of our government, some courts have gone far towards sustaining.

". . . The majority of the cases lay down the rule that statutes or ordinances vesting discretion in administrative officers and bureaus must lay down rules and tests to guide and control them in the exercise of the discretion granted in order to be valid; but several courts apply the rule with varying degrees of strictness. Other cases go so far in sustaining, especially in cases involving police regulation, grants of discretionary power to administrative officers and bureaus without prescribing any definite rule or specified conditions to which the officers must conform, as, in effect, to substitute for government by legislation, government by administrative officers and bureaus. . . ."

Where the legislature assumes to regulate the exercise of a business which has some relation to the public health and safety, and gives to the administrative agency the authority to grant or refuse to grant a license or permit to engage in the business, it must declare the policy of the law and prescribe and fix the legal principles which are to control. The administrative agency may be vested with power to ascertain the facts and conditions to which the policy and the principles apply.

The Commonwealth argues that the decision in *Reynolds* v. *Milk Commission*, 163 Va. 957, 179 S. E. 507, and *Dickerson* v. *Commonwealth*, 181 Va. 313, 24 S. E. (2d) 550, aff'd. 321 U. S. 131, 64 S. Ct. 464, 88 L. ed. 605, are controlling in this case. The dominant reason for our upholding the Milk Control Act was the vital relation of the dairy business, a basic industry, to the public health, making its preservation essential to the general public welfare. Milk is one of the prime necessities of life to thousands of very young children and a necessary article of diet to a vast majority of people of all ages. Furthermore, it is a product peculiarly liable to contamination and adulteration. The laundry and dry cleaning business, useful, serviceable and convenient as it may be, is not a basic or paramount industry, nor does it have anything like that vital relation to the public health which characterizes the production, distribution and sale of milk and cream. Nowhere in our decision in the *Reynolds* case is it indicated that the legislature could delegate authority to the Milk Commission without setting reasonable standards for its exercise.

The question in *Dickerson* v. *Commonwealth, supra,* was the validity of a rule adopted by the Alcoholic Beverage Control Board regulating the transportation of intoxicating beverages within and

through the State. In that case the legislature was dealing with a business of such recognized evil propensities that it had the power to and at one period did prohibit all traffic therein. In upholding the statute, Mr. Justice Spratley, speaking for the Court, restated the principle applicable to the facts in this case. He said (181 Va. 322):

". . . It further expressly authorizes and empowers the Board to adopt such regulations governing the transportation of such beverages in excess of one gallon within, into or through Virginia, 'as it may deem necessary to confine such transportation to legitimate purposes,' and 'to issue transportation permits in accordance with such regulations.' . . .

"The Board is limited to the making of reasonable regulations to carry out the purposes and provisions of the Act, provided they are not in conflict with the Act or the general laws of the State. This is the definite standard and intelligible principle to which the Board must conform. This standard confines transportation to legitimate purposes. It does not interfere with legitimate transportation in accordance with reasonable regulations.

"There is nothing indefinite about the adjective 'legitimate'. . . . A transportation to an unlawful consignee is a transportation not in 'accord with law' or for a 'lawful' purpose.

"Much has been said and written with reference to the cardinal principle of our fundamental law that a legislature ought not and cannot delegate its power to make laws to any other department or body. The line of demarcation between legislative functions, which must be exercised by the legislature itself, and those functions of an administrative or executive nature which may be delegated to a board or an officer, is not always clear."

The validity of statutes regulating the dry cleaning business has been attacked in various states. In several states such statutes have been upheld; in others they have been declared invalid. *Miami Laundry Co.* v. *Florida Dry Cleaning & Laundry Board*, 134 Fla. 1, 183 So. 759, 119 A. L. R. 956, is one of the leading cases which, by a three to two decision, declared valid a statute somewhat similar to that of Virginia. It was there contended, as the Attorney General contends here, that the business is clothed with a public interest and, therefore, a proper subject for legislative regulation for the protection of safety, health and welfare of the general public. In a strong dissenting opinion it was said that the relation of the dry cleaning business "to the public health is rather remote, and no

greater than that of many other ordinary businesses in this State. This is indicated by the act itself, which eliminates 'washwomen' from its regulations, and also eliminates from its application counties containing nearly one-third of the State's population, and does not contain any provision setting up even a minimum standard of sanitary conditions to be maintained by these industries in the counties where it applies. While, in brief general terms, the act gives the Board power to make 'health and sanitation requirements,' (and many other powers of other sorts in broad general terms) it gives no hint of what they shall be, nor does it set forth any general principle or standard by which action under this delegated legislative power should be exercised or measured. . . ."

A statute similar to the Florida and Virginia statutes regulating the dry cleaning business was declared invalid in *State* v. *Harris,* 216 N. C. 746, 6 S. E. (2d) 854. A greater part of the opinion of the North Carolina Court is devoted to the provisions authorizing the Board to examine applicants for licenses and to fix the compensation to be charged by dry cleaners. The Virginia Act does not in express terms include either of these provisions. However, in dealing with the question of delegating legislative authority to an administrative agency, it was said (6 S. E. (2d) 860):

"In licensing those who desire to engage in professions or occupations as may be proper subjects of such regulation, the Legislature may confer upon executive officers or bodies the power of granting or refusing to license persons to enter such trades or professions only when it has prescribed a sufficient standard for their guidance. 16 C.J.S., Constitutional Law, page 373, § 138, and cases cited.

"Where such a power is left to the unlimited discretion of a board, to be exercised without the guide of legislative standards, the statute is not only discriminatory but must be regarded as an attempted delegation of the legislative function offensive both to the State and the Federal Constitution. . . ."

The subject matter of this legislation, the dry cleaning business, requires no special skill or training. There is nothing peculiar in the business which distinguishes it from ordinary work and labor. Such work is frequently done and well done by a housewife or a washerwoman. It may have some indirect relation to public health and safety, but it is not a sufficient menace to either to require it to be controlled by an administrative agency with absolute and unlimited authority. The legislature, in delegating to the Board the

power to make rules and regulations, did so in broad general terms. It authorized the Board to promulgate such rules and regulations *as it deemed necessary* to regulate and control the business. It declared no specific policy nor fixed any standard to direct and guide the Board in making rules. We have consistently declared such delegation of legislative power to be invalid. *Moore* v. *Sutton,* 185 Va. 481, 39 S. E. (2d) 348; *Kizee* v. *Conway,* 184 Va. 300, 35 S. E. (2d) 99; *Assaid* v. *Roanoke,* 179 Va. 47, 18 S. E. (2d) 287; *Southern Railway* v. *Commonwealth,* 159 Va. 779, 167 S. E. 578; *Thompson* v. *Smith, supra,* and authorities therein cited. To the same effect see *American Baseball Club* v. *Philadelphia,* 312 Pa. 311, 167 Atl. 891, 92 A. L. R. 386, Ann. p. 400; *Becker* v. *State,* 37 Del. 454, 185 Atl. 92; 11 Am. Jur. 947, Constitutional Law, § 234; 16 C.J.S. 372, Constitutional Law, § 138.

Defendant's second contention; namely, that the Act makes an arbitrary and unreasonable classification as to its application, involves Section 54-216. This section declares that the Act shall be effective in all cities, but shall not be effective in any county "unless and until there has been filed with the Board a petition signed by two-thirds of the resident persons actually engaged in the cleaning, dyeing and pressing business at the time of such petition in such county, signifying their desire to be governed by this chapter."

This provision of the Act is invalid. It confers on some dry cleaners within a county the power to impose additional burdens upon others in the same county. It creates no standard by which the power thus given is to be exercised. If there are nine dry cleaners engaged in the business in any one county and six of them request the Board to impose the annual license fee, the Board must comply with the request. That is, this section delegates not to the Board, but to private parties in any one or more of the counties the right to make the provisions of the Act effective in such county, thereby imposing a burden upon others they would not otherwise have to bear. The application of the Act in any one or more of the ninety-eight counties is delegated to the mere whim of private citizens. It is difficult to understand how the public health, safety and welfare of the people of the State will be promoted by making the Act effective in one area and leaving the application of the Act in other areas to the unlimited discretion of private citizens. *Eubank* v. *Richmond,* 226 U. S. 137, 33 S. Ct. 76, 57 L. ed. 156,

42 L. R. A. (N.S.) 1123; *Washington, ex rel. Seattle Trust Co.* v. *Roberge*, 278 U. S. 116, 49 S. Ct. 50, 73 L. ed. 210; *Assaid* v. *Roanoke, supra.*

Section 170 of the Constitution authorizes the legislature to impose a license tax upon any business in the following language: "The General Assembly . . . may levy a license tax upon any business which cannot be reached by the ad valorem system." Section 54-209 of the Act specifically declares that "no person shall engage in the cleaning, dyeing, or pressing business within the State without first obtaining a license therefor from the Board. . . ."

The legislature has no authority to levy a license tax upon business conducted in one part of the State and refrain from levying the same license tax upon the conduct of the same business in other parts of the State.

Our conclusions are that the Act is invalid for the following reasons:

1. It requires a dry cleaners' license tax for the mere transportation of clothes and other fabrics to and from a dry cleaning establishment;

2. It delegates unlimited discretion to an administrative agency to promulgate rules regulating the granting, suspending, or revoking of licenses to conduct a business without fixing any standard or test to guide and control the exercise of such discretion;

3. It makes an unreasonable and arbitrary classification of the areas in which it is to be effective.

The judgment of the trial court is reversed and final judgment here entered dismissing the prosecution.

*Reversed and final judgment.*