David SILVETTE, Plaintiff,

v.

ART COMMISSION OF the COMMON-
WEALTH OF VIRGINIA, Defendant.

Civ. A. No. 74–0128–R.

United States District Court,
E. D. Virginia,
Richmond Division.

June 1, 1976.

David Silvette, pro se.

Andrew P. Miller, Robert P. Kyle, Walter H. Ryland and William H. Hefty, Asst. Atty. Gen., Richmond, Va., for defendant.

Before BRYAN, Circuit Judge, and LEWIS and MERHIGE, District Judges.

OREN R. LEWIS, Senior District Judge.

This controversy between David Silvette, a portrait painter, and the Virginia Art

Commission [1] over the rules and procedures employed by the Art Commission in recommending acceptance or rejection of donated portraits tendered the Commonwealth has been brewing for many years—It reached the boiling point in 1972 when the Art Commission suggested that Mr. Silvette modify a portrait he had submitted for acceptance by the Commonwealth.

After appealing to the Governor without success, Mr. Silvette filed a pro se petition for a declaratory judgment in the Circuit Court of the City of Richmond, seeking to have Rule 4(c) [2] of the Art Commission declared unconstitutional as an abridgement of his First Amendment right of free expression.

While his suit was pending in the state court, Mr. Silvette was commissioned to paint a portrait of Dr. Richard Lee Morton to be placed in Morton Hall at the College of William and Mary (a state institution).

By letter opinion dated January 16, 1974 the state trial court declared that the Art Commission's Rule 4(c) puts the artist in the position of coerced submission to avoid ultimate rejection and is a direct restraint on his freedom of expression—By order entered February 1, 1974 the Art Commission was prohibited from applying its Rule 4(c) as a condition to considering portraits as gifts to the Commission.

On February 8, 1974 Mr. Silvette had a messenger deliver the finished portrait of Dr. Morton to the Art Commission for approval as a gift to the State—The Art Commission called a special meeting for February 9, 1974 to review the portrait, and recommended to the Governor that the portrait not be accepted upon the following grounds:

Members of the Commission reviewed the painting carefully and thoroughly. All members felt that the head was well-

---

1. The Art Commission's duties under the Virginia Code, §§ 9–11 and 9–12 prior to the 1975 amendment, were to advise the Governor as to whether works of art were worthy of acceptance.

2. Rule 4(c) provides:

It is important, particularly for portraits, that preliminary sketches, cartoons, color photographs or other preliminary work be submitted to the Commission before the work is completed to such an extent that changes would be difficult.

painted, but that the remainder of the painting was not up to standard of the painting done on the head.

It was felt that the figure was painted in such a manner that the subject appears not to be seated on the chair.

The left hand appears to be poorly painted.

The lower end of the subject's necktie is so prominent as to be a disturbing factor, so much so as to lead the viewer's eye "out of the picture."

The several books at the right shoulder of the subject are so placed in the composition, and are of such vivid color that, again, the viewer's eye is taken away from the center of interest.

The shadows on the coat are all of the same value, where some shading would have given the figure a better three-dimensional quality, which has been so skillfully executed in the head of this painting.

In view of these comments, the Commission recommends to the Governor that the portrait not be accepted.

The Governor rejected the portrait of Dr. Morton on February 25, 1974.

Mr. Silvette elected not to make the suggested modifications—Instead, he proceeded to file a pro se complaint in this court on March 10, 1974, seeking to restrain the enforcement, operation and execution of §§ 9–11[3] and 9–12[4] of the Code of Virginia—The Art Commission of the Commonwealth of Virginia was named the defendant.

The plaintiff claims that the action of the Art Commission in rejecting Dr. Morton's portrait constituted an unlawful censorship of free artistic expression through the use of a subterfuge form of censorship and represents an unequal enforcement of the

law—He further contends that the granting of the power of approval to the Governor and the Art Commission is an unconstitutional delegation of legislative powers and that the statutes in question, §§ 9–11 and 9–12, are unconstitutional because of vagueness and because there is no provision for review.

Silvette did not ask for costs, damages or attorney fees.

A three-judge court as required by 28 U.S.C. § 2281 was designated on March 22, 1974.

The Art Commission denied all of the plaintiff's allegations on April 11, 1974 and asked this Court to abstain from further proceedings herein until the Virginia Supreme Court had ruled on its pending appeal of the aforesaid state trial court ruling.

Considerable correspondence between the plaintiff and the Attorney General's office followed—all of which unnecessarily aggravated the existing discord amongst the parties.

The Supreme Court of Virginia reversed the state trial court on March 11, 1975, stating—

". . . Paragraph 4(c) did not give rise to a justiciable controversy. The 'rule' is permissive, not mandatory. The record shows that Silvette customarily refrains from complying with it, and that the Commission makes no effort to enforce it as a prerequisite to final approval of portraits. Therefore, there is no actual controversy within the meaning of Code § 8–578 for which a declaratory judgment may be sought, and there is no prior restraint upon Silvette in violation of his First Amendment rights." *Commonwealth of Virginia ex rel. Art Commission v. Silvette*, 215 Va. 596, 212 S.E.2d 261.

---

**3.** The relevant portion of § 9–11 reads:
[N]o work of art shall become the property of the State by purchase, gift or otherwise, unless . . . submitted to, and approved by the Governor acting with the advice and counsel of the Art Commission.

**4.** § 9–12 provides:

The Governor is authorized to accept, in the name of the Commonwealth, gifts to the Commonwealth of works of art as defined in § 9–10. But no work of art shall be so accepted until submitted to the Art Commission or otherwise brought to its attention, and by it deemed worthy of acceptance.

The Virginia statutes in question, namely §§ 9–11 and 9–12, were amended during the 1975 session of the Virginia legislature.

Section 9–11, as amended, provides, among other things, that

". . . [N]o work of art shall become the property of the State by purchase, gift or otherwise, unless such work of art or a design thereof, together with its proposed location, shall have been submitted to and approved by the Governor acting with the advice and counsel of the Art Commission . . .; nor shall [the provisions of this section] apply to any portrait, tablet or work of art acquired by museums operated in conjunction with art or architectural departments at State colleges or universities."

Section 9–12, as amended, provides that ". . . [N]o work of art shall be so accepted until submitted to the Art Commission or otherwise brought to its attention for its advice and counsel to the Governor."

■ Mr. Silvette tendered a lengthy amendment to his complaint on September 24, 1975 (some twenty-one pages), seeking compensatory and punitive damages as a deterrent to prevent state officials from advocating and continuing a state policy of restricting free expression, in which he harangued the Attorney General's office for defending the Art Commission in the state and federal litigation and for instigating or encouraging the Art Commission in having the Virginia General Assembly amend §§ 9–11 and 9–12 in order to moot the issues pending before this Court.

The plaintiff seeks through his proposed amendment to invoke issues totally unrelated to the constitutionality of §§ 9–11 and 9–12 of the Code of Virginia.

Leave of Court to file the amended complaint was neither sought nor had—Although leave of Court to amend a complaint shall be freely granted when justice so requires, such is not the case here.

Therefore leave to file the proposed amendment will be denied.

The necessary facts to hear and determine this matter were ultimately developed by stipulations, requests for admissions and documentary exhibits. Final briefs were submitted March 26, 1976—Oral argument was waived.[5]

Most, if not all, of the plaintiff's original complaint has been mooted by the Supreme Court of Virginia in *Commonwealth of Virginia ex rel. Art Commission v. Silvette,* supra, and the 1975 amendments of §§ 9–11 and 9–12.

Dr. Morton's picture, without change,[6] now hangs in Morton Hall at the College of William and Mary.

The Supreme Court of Virginia in *Silvette* held:

"There is no authority in the statute, under which the Art Commission was created and functions, for the enactment of rules having the effect of law or for the adjudication of contested cases. There is no requirement that the [Art] Commission conduct hearings. Thus, it is not an agency within the purview of the General Administrative Agencies Act. . . ."

■ Clearly the Commonwealth of Virginia has the right to acquire personal property by purchase, gift or otherwise. See 81 C.J.S. States § 104. The right to reject a gift is not questioned.

---

**5.** We regret that the presentation by counsel for the defendant was of so little help that we feel forced to make mention of it. To begin with, its answer is just an argument. Moreover, it refers us to an order of the "District Court of the City of Richmond" in litigation between the instant parties and purportedly exhibits a copy of the opinion of that court. This opinion was not given us and we understand that there was no such case in that court. It appears not to be a court of record. The defendant's brief bears no indication on its cover for whom it is a brief. On page 20 it refers to § 6–12 of the 1975 amendment, but no such section can be found. This submission is hardly in keeping with the obligation of counsel to the Court.

**6.** The 1976 amendment exempted portraits acquired by museums operated in conjunction with art or architectural departments of state colleges or universities from the requirement of the statute.

■ The authority to accept gifts tendered the State of Virginia was delegated by the General Assembly to the Governor of Virginia, with the advice and counsel of the Art Commission—Such delegation of power is compatible with Virginia law. See *Board of Supervisors v. State Milk Commission*, 191 Va. 1, 60 S.E.2d 35 (1950). See also *Chapel v. Commonwealth of Virginia*, 197 Va. 406, 89 S.E.2d 337 (1955), wherein the court stated, at page 340,

"This does not mean, however, that no discretion can be left to administrative officers in administering the law. Government could not be efficiently carried on if something could not be left to the judgment and discretion of administrative officers to accomplish in detail what is authorized or required by law in general terms."

■ Prior to the 1975 amendment the Governor could accept gifts to the Commonwealth of works of art only if the Commission deemed such gifts worthy of acceptance.

The 1975 amendment deleted the "worthy of acceptance" requirement—The Commission's only function now is to advise and counsel the Governor in the premises.

The procedures for acquiring works of art by the Commonwealth of Virginia by purchase, gift or otherwise have been spelled out by the 1975 Virginia General Assembly with exactitude and clarity in amended §§ 9–11 and 9–12 of the Code of Virginia.

These amended statutes are neither unlawful nor unconstitutional.

Mr. Silvette's most persistent claim that these sections of the Virginia Code violate his First Amendment right of free expression is misplaced—Sections 9–11 and 9–12 in no manner abridge an artist's First Amendment right of free expression—They delineate only the means by which the Commonwealth may acquire works of art by purchase or otherwise.

■ Of course an artist has the right to paint as he chooses. It does not follow, however, that he has the right to compel the Commonwealth to accept and display any or all of his paintings tendered as gifts.

A somewhat similar situation was presented, and determined by the Third Circuit, in *Avins v. Rutgers, the State University of New Jersey*, 3 Cir., 385 F.2d 151 (1967), wherein the author of a rejected article he had submitted to the Rutgers Law Review asserted that the rejection of his work by the Editorial Board of the Law Review violated his constitutional right of freedom of speech. The Court of Appeals, after noting that the right of freedom of speech does not open every avenue to one who desires to use a particular outlet for expression, concluded—

". . . [H]e does not have the right, constitutional or otherwise, to commandeer the press and columns of the Rutgers Law Review for the publication of his article, at the expense of the subscribers to the Review and the New Jersey taxpayers, to the exclusion of other articles deemed by the editors to be more suitable for publication. . . ."

An artist is in a somewhat analogous situation—He cannot compel the acceptance of his painting any more than an author can force the publication of his article.

Further, the advisory function of the Art Commission in this case is quite similar to that of the Editorial Board of the Law Review in *Rutgers*—They both involve an assessment of judgment. In this case, an artistic judgment—a conclusion which delights the chosen and offends the rejected.

Someone or some group must ultimately determine whether a work of art has substantial artistic and cultural significance in order to advise and counsel the Governor in re its acceptance. This duty to advise and counsel includes the right to state the reasons therefor—and suggesting changes in a portrait intended as a gift to the State, as was done here, does not violate the artist's First Amendment right of free artistic expression.

The artist may or may not choose to make the suggested changes—However, neither the artist nor the donor has the right to compel acceptance of the tendered

painting in an unaltered or altered form. The authority to accept for the Commonwealth rests with the Governor under the statute.

Therefore this suit should be dismissed at the cost of the plaintiff.