FREDERICKSBURG AUTO AUCTION, INC., ET AL.

V.

DEPARTMENT OF MOTOR VEHICLES

Record No. 901354

June 7, 1991

Present: All the Justices

*Walter H. Ryland (Russell H. Roberts; Williams, Mullen, Christian & Dobbins; Roberts, Sokol, Ashby & Jones*, on brief), for appellant.

*Eric K. G. Fiske, Assistant Attorney General (Mary Sue Terry, Attorney General*, on brief), for appellee.

JUSTICE RUSSELL delivered the opinion of the Court.

For many years, a person intending to engage in business as a motor vehicle dealer in Virginia has been required by statute to obtain a license from the Department of Motor Vehicles (DMV). In 1988, the General Assembly amended the statutory licensing scheme in two respects: (1) Code § 46.2-1508 was amended to require that a person licensed as a dealer in another state must obtain a "certificate of dealer registration" from DMV as a prerequisite to selling motor vehicles at wholesale auctions in Virginia; (2) Code §§ 46.2-1522 *et seq.*, were enacted to create the Motor Vehicle Transaction Recovery Fund (the Fund) to be financed by fees paid by registered and licensed dealers, and used to compensate victims of fraud practiced by such dealers.

This appeal arises from a constitutional challenge to the 1988 amendments, made by two licensed Virginia dealers who operate wholesale auctions and one out-of-state dealer who sells vehicles in Virginia through such auctions. We uphold the constitutionality of the 1988 amendments.

Fredericksburg Auto Auction, Inc. and Harrisonburg Auto Auction, Inc. are licensed as motor vehicle dealers by DMV. Both conduct wholesale auctions in Virginia. Raymond H. Smith, a motor vehicle dealer licensed in Pennsylvania and registered in Vir-

ginia under the 1988 amendments, sells vehicles at wholesale auctions in Virginia. These three parties (the dealers) filed a bill of complaint in the trial court against DMV, asking the court to hold that the registration requirement, the Fund, and the associated fees are unconstitutional. The prayer of the bill was for an injunction against enforcement of the 1988 amendments. After a trial *ore tenus*, the court issued a written opinion holding the 1988 amendments constitutional and, on July 10, 1990, entered a final decree dismissing the suit. We awarded the dealers an appeal.

The dealers argue that the 1988 amendments violate certain provisions of the Constitution of Virginia, specifically those pertaining to the use and enjoyment of property, Va. Const. art. I, § 1; the taking of private property without due process of law, Va. Const. art. I, § 11; the taking of private property for a private purpose, *id.*; and special legislation, Va. Const. art. IV, § 14. They also argue that the amendments constitute an invalid restraint on interstate commerce in violation of the Commerce Clause, U.S. Const. art. I, § 8.

## I. USE AND ENJOYMENT OF PROPERTY AND DUE PROCESS

The dealers contend that the 1988 amendments create a regulatory scheme that is impermissibly discriminatory. They state (erroneously) that only wholesale auctions are singled out for regulation and (correctly) that certain sellers at such auctions are exempted from regulation, *i.e.*, rental car companies, leasing companies, financial institutions, insurance companies, fiduciaries, and private persons disposing of vehicles acquired for their own use. Code § 46.2-1500. The result, the dealers contend, is a burden which falls unfairly on small out-of-state dealers.

■ The evidence was not in conflict. DMV witnesses testified that fraud in the sale of used motor vehicles, particularly odometer tampering, has been a continuing problem. The General Assembly has undertaken to provide a measure of consumer protection in this area for many years by providing for the licensure, regulation, and bonding of motor vehicle dealers. Dealers licensed in Virginia were formerly required to carry a $15,000 bond to protect consumers against fraud. In 1988, the General Assembly considered a proposal to increase the amount of the bond to $50,000, but that alternative was deemed prohibitively expensive to small dealers. Instead, the 1988 amendments were adopted, creating the

Fund for the protection of consumers. In-state dealers were required to pay a $100 annual license fee for each principal place of business and a $60 one-time assessment fee to finance the Fund. Out-of-state dealers, who are licensed in their own states and who intend to sell motor vehicles at wholesale auctions in Virginia, were required to pay an annual registration fee of $50 and a $60 one-time assessment fee to finance the Fund. Code §§ 46.2-1508, -1519(A), and -1522.*

Before the 1988 amendments became effective, there was no regulation of out-of-state dealers who brought motor vehicles into Virginia to sell at wholesale auctions. The evidence showed that some Virginia auction companies made self-policing efforts to exclude dealers who had well-known reputations in other states for fraudulent practices. The DMV, however, had no way of knowing which out-of-state dealers were selling vehicles in Virginia, nor could it control their business practices in this state even if such dealers were known to have engaged in fraudulent activities elsewhere.

■ The trial court found, and we agree, that the effect of the 1988 amendments was to impose uniformity upon the regulation of sales of motor vehicles in Virginia, and not to discriminate among classes of dealers. The purpose of the amendments was to afford uniform protection to those who purchase vehicles at wholesale auctions, for the ultimate benefit of consumers who would purchase the vehicles at retail. The State has a valid continuing interest in the protection of the public from fraud, and the means chosen by the General Assembly effectively serve that interest.

Nevertheless, the dealers contend that the exemption of some classes of sellers at auctions results in a discriminatory burden upon out-of-state dealers which interferes with their property rights and takes their property without due process of law, in violation of Article I, Sections 1 and 11 of the Constitution of Virginia. They argue that although the State may validly exercise its police power to regulate an industry for the protection of the people against fraud, the State must regulate evenhandedly and "must regulate it all." The dealers, citing *Moore v. Sutton*, 185 Va. 481, 39 S.E.2d 348 (1946) (regulation of photographers not reasonably related to public safety) and *Chapel* v. *Common-*

---

* If the Fund should fall below $500,000 at any time after December 31, 1989, in-state licensed dealers and out-of-state registered dealers are both subject to a $30 annual reassessment to replenish the Fund. Code § 46.2-1522.

*wealth*, 197 Va. 406, 89 S.E.2d 337 (1955) (regulation of dry cleaners who deliver while exempting those who do not held discriminatory), assert that the exemptions subject them to the burden of an unreasonable and arbitrary classification.

■ That argument misconceives the nature of the 1988 amendments. Rather than selecting out-of-state dealers alone for regulation, the amendments impose a degree of uniformity previously lacking in an industry formerly only partially regulated. Rather than imposing a disproportionate burden upon out-of-state dealers, the amendments subject them to less stringent and less expensive regulation than the more rigorous licensure requirements imposed upon in-state dealers. The net effect of the amendments is to regulate all motor vehicle dealers who sell at wholesale auctions in Virginia; but less burdensome requirements are imposed upon out-of-state dealers in recognition of the fact that they must be licensed in their own states and, generally, occupy a smaller proportion of the local market.

■ The exclusion of the exempted classes of sellers was accomplished by removing them from the definition of "motor vehicle dealer" in Code § 46.2-1500. Under the evidence, that classification has a rational basis and is not arbitrary because none of the excluded classes is engaged in the sale of motor vehicles in the ordinary course of business. Financial institutions must dispose of vehicles acquired through foreclosure and repossession, but are not primarily engaged in the business of selling them. Rental and leasing companies dispose of vehicles in their fleets, but their primary business is rental, not purchase for resale. Insurance companies obtain possession of damaged and repaired vehicles by agreement with their policyholders, and must dispose of such vehicles, but their primary business is insuring risks, not selling vehicles. Others, including private individuals, must often sell vehicles owned for personal use, but are not primarily engaged in the business of selling motor vehicles.

■ The evidence indicated that DMV's experience with motor vehicle fraud at wholesale auctions stemmed entirely from the practices of unscrupulous dealers, including out-of-state dealers. The evidence showed no history of such fraud stemming from any of the exempt businesses. Where, as here, a statutory classification is reasonable, is not arbitrary, and bears a rational relationship to the legislative objective, there is no impermissible discrimination

under the Constitution of Virginia. *Archer and Johnson* v. *Mayes*, 213 Va. 633, 638, 194 S.E.2d 707, 710 (1973).

## II. TAKING PRIVATE PROPERTY FOR A PRIVATE PURPOSE

■ We do not agree with the dealers' contention that assessing them for the Fund constitutes a taking of their property for a private purpose. Article I, section 11, of the Constitution of Virginia provides that no "private property shall be taken or damaged for public uses, without just compensation, the term 'public uses' to be defined by the General Assembly." Valid exercises of the police power are not, however, "takings" within the meaning of the Constitution, even when they result in regulation which imposes some economic burden upon property. All citizens hold property subject to the proper exercise of the police power for the common good. Thus, no "taking" occurs in those circumstances, even where a substantial economic loss results. *Commonwealth* v. *County Utilities*, 223 Va. 534, 542, 290 S.E.2d 867, 872 (1982).

■ Because the regulatory scheme imposed by the 1988 amendments constitutes a valid exercise of the police power, it does not result in a "taking" within the meaning of the Constitution of Virginia. Further, because the Fund was created for the purpose of compensating all members of the general public who may at any time suffer damage as a result of fraud in the sale of a motor vehicle, and does not inure to the benefit of any private person or class, it exists solely for a valid public purpose.

## III. SPECIAL LEGISLATION

The dealers argue that the 1988 amendments constitute special legislation in violation of Article IV, section 14, of the Constitution of Virginia. Specifically, they contend (1) that the registration requirement offends paragraph 18 of that section, which prohibits the General Assembly from "[g]ranting to any private corporation, association, or individual any special or exclusive right, privilege, or immunity," and (2) that the Fund offends paragraph 3, which prohibits the General Assembly from "providing or changing the methods of collecting debts or enforcing judgments."

■ To withstand a challenge under the Virginia Constitution's prohibitions against special laws, a statute must bear "a rea-

sonable and substantial relation to the object sought to be accomplished by the legislation." *Benderson Development Co.* v. *Sciortino*, 236 Va. 136, 147, 372 S.E.2d 751, 757 (1988) (quoting *Mandell* v. *Haddon*, 202 Va. 979, 991, 121 S.E.2d 516, 525 (1961)). The constitutional prohibitions against special laws do not prohibit legislative classifications; they merely require that such classifications be "natural and reasonable, and appropriate to the occasion." *Benderson*, 236 Va. at 140-41, 372 S.E.2d at 753; *accord Holly Hill Farm Corp.* v. *Rowe*, 241 Va. 425, 430, 404 S.E.2d 48, 50 (1991). We further observed that legislative enactments are entitled to a presumption of constitutionality and that our first inquiry, in determining whether the presumption has been overcome, is whether the challenged law "affects all persons similarly situated or engaged in the same business throughout the State without discrimination." *Benderson*, 236 Va. at 141, 372 S.E.2d at 753.

■ The 1988 amendments meet those tests. For the reasons stated in part I of this opinion, they apply without discrimination to all who sell motor vehicles in the regular course of business at wholesale auctions throughout the state. The legislative purpose was to provide uniformity in the regulation of wholesale motor vehicle auctions, for the protection of purchasers against fraud practiced by motor vehicle dealers. That purpose was met by the licensing and registration requirements, which enable DMV to exclude dealers engaging in fraudulent practices, as well as by the Fund, which provides a source for the compensation of the victims of such practices. The Fund was to be financed by all regulated dealers, without discrimination. The statutory scheme gives all motor vehicle dealers equal access to the wholesale auction market and creates no favored class. The 1988 amendments, therefore, bear "a reasonable and substantial relation to the object sought to be accomplished by the legislation."

## IV. INTERSTATE COMMERCE

The dealers argue here, as they did in the trial court, that the 1988 amendments place a burden on interstate commerce that is excessive when balanced against the State's interest in protecting purchasers from fraud in the sale of motor vehicles. The trial court held that the burden on interstate commerce was "barely discernible."

 The balancing test which must be applied is set forth in *Pike* v. *Bruce Church, Inc.*, 397 U.S. 137, 142 (1970):

> Where the statute regulates evenhandedly to effectuate a legitimate local public interest, and its effects on interstate commerce are only incidental, it will be upheld unless the burden imposed on such commerce is clearly excessive in relation to the putative local benefits.

*See also American Motors* v. *Division of Motor Vehicles*, 592 F.2d 219 (4th Cir.), *cert. denied*, 444 U.S. 836 (1979). As we have said, the 1988 amendments regulate evenhandedly and effectuate a legitimate legislative interest in promoting a valid public purpose. Our inquiry, then, must be whether the effect upon interstate commerce is "incidental," or substantially more burdensome, as the dealers contend.

It is noteworthy that the benefits of the Fund are available to "any person" injured by fraud practiced in the sale of a motor vehicle, whose claim is reduced to judgment. Code § 46.2-1523. The benefits are equally available to nonresidents and residents of Virginia. Payments from the Fund are to be made whether the fraud was practiced by a licensed resident dealer or a registered out-of-state dealer, without any distinction between those classes. Members of the two classes are equally assessed to finance the Fund. The registration fee imposed on out-of-state dealers is less than the license fee imposed on resident dealers, and the regulations governing registration are less burdensome than those governing licensure. Out-of-state motor vehicle dealers who attend wholesale auctions as buyers, rather than as sellers, are unaffected. Out-of-state dealers who sell motor vehicles to Virginia residents outside the state are unaffected. The exempt categories apply without discrimination to nonresidents as well as to residents.

 We agree with the trial court's conclusion that the net effect of the 1988 amendments upon interstate commerce is "barely discernible." Because the statutory scheme imposes only an incidental burden upon interstate commerce which is not excessive in relation to the public benefits it provides, we hold that it does not offend the Commerce Clause.

For the foregoing reasons, the decree appealed from will be

. *Affirmed.*